. For example, My name is J.C. Plieben on behalf of the appellate, Randy Henry. Randy Henry is with me here in the courtroom today. This is a case about protected First Amendment speech from Randy Henry that caused a highway trooper to be charged related to the death of a 20-year-old child and later plead guilty, all because of what he did and what he said. His speech outed cover-up of the drowning and government corruption. We ask that this court reverse and remand because the district court improperly granted summary judgment because there were genuine issues of material fact. Qualified immunity wasn't proper because there was no evidence of disruption and pickering was improperly applied. Last, we think that it should be reversed as well because Henry created or put forth enough evidence to create a factual issue as to whether or not their decision to demote, transfer, and send him to an EAP was based on his speech. The first issue that I'd like to address is that genuine issues of material fact existed in this case. First, they've used police interviews, which aren't permissible under the Walker case, which this court has decided. Another example, and we've put forth a lot in our brief, but I'd like to at least highlight a few, is Exhibit FFF. FFF is a one-page document that isn't dated. No one has attested to its authenticity, and it's supposedly from Cam C, a prosecutor who finally entered into this case and obtained the guilty plea from Trooper Piercy. Nobody could identify who created it, when it was created, why it was created, or where it appeared from. That's not proper evidence. That would be like me coming in here and saying, well, this document wound up on my desk and it says there's a big conspiracy and corruption and therefore it proves my case. This court wouldn't allow it. The district court relied on that document, though, to say that the statements that Mr. Henry made were unsupported. That's not true. Even if that document is allowed to be considered on the summary judgment record, the court weighed the evidence. The court said that because of this letter, Henry was not a whistleblower, his speech wasn't protected, and there was no cover-up or wrongdoing. But here's our evidence. Defendant Stacey Mosher came in and said in a deposition that the lack of inappropriate investigation by the Highway Patrol was designed to limit their liability. A federal judge found that the Missouri State Highway Patrol intentionally did not disclose documents that related to this drowning. In addition, we presented many facts about this investigation, not the least of which is Mr. Piercy on the very day being told that his job was safe, that he needed to write a statement, even though a kid had just drowned in his custody, and it would be changed to fit the facts. He was allowed to manipulate a key piece of evidence. The person who investigated Mr. Piercy was a man by the name of Stacks, Piercy's friend for 18 years who had never done a boat investigation. Supervisors would later say that his investigation was so inadequate that he should have been disciplined. That didn't happen. We later move on. The inadequate investigation, I think, was addressed in length in our brief, but we get an inquest. The prosecutor on the case, also a friend of Piercy, recused himself but stayed involved in the prosecution. The inquest was then prosecuted by Amanda Grellner. Amanda Grellner's son, Garrett Grellner, had been exonerated by the Missouri State Highway Patrol just before she prosecutes Mr. Piercy. Stacey Mosher testified, or there was, the testimony was that Stacey Mosher's boss, Stacks, the same person who's investigating Mr. Piercy, said, you take this DNA evidence and make that Garrett Grellner rape investigation go away. That's what happened. And as it turns out, there was one piece of DNA that was never tested, and the Highway Patrol exonerated Garrett Grellner. The inquest was wildly inadequate. Ms. Grellner knew that Piercy was lying during the inquest and did nothing about it. She allowed his own attorneys to ask Mr. Piercy questions. The old adage is you can indict a ham sandwich, and in this case, that didn't happen. They got the result that they wanted, that the drowning was accidental. Counsel, I think the facts here are egregious and tragic, but how does that impact our Pickering analysis in terms of the interest involved in the disruption to the Highway Patrol? I don't think that you reach Pickering in this case because I don't think that there's any evidence of disruption. So first, the only evidence relied on by the district court was the conclusion of the Highway Patrol, an out-of-court statement offered for the truth of the matter. That's hearsay. So there was no evidence. No one came in and testified that there was disruption. No one said we thought there was going to be disruption. There was no affidavit saying we thought there was disruption or could be disruption. So I think that what the courts have said is that there needs to be a showing, especially when you have speech that's a matter of public concern, which is what we have here. Both the Waters Supreme Court and the, I'm sorry, Connick Court have said that if you need, if you want to predict future disruption, the government needs to have a strong showing. And in this case, there is none. And so I believe that at that point, you never get to Pickering. Well, wasn't there at least one prosecutor who said he wouldn't take cases anymore because of this? And I think there's a dispute of fact as well for that, Judge. So there was Groener and Dunkley who said they wouldn't take Randy Henry's cases. But Ms. Groener said she wouldn't take Piercy's cases. He was never disciplined. Mr. Dunkley said that he would never take Mosier's cases. She was never disciplined. So I don't think that that then creates an issue of disruption. But wasn't your client a different rank than those other officers? And wasn't, my recollection is the district court said, well, look, these, in other words, cases from line officers would go up through your client. And that was a different factual setting related to those other officers you just mentioned. He was a different rank, but the demotion would bump him back down to corporate. So he would be at the exact same rank as all the other people. So the transfer then would be exactly the same as what Mosier or Piercy should have faced because they all would have been the same rank. And I think that even to address that further, the likelihood that Mr. Henry would have brought a case to either Dunkley or Groener is slim to none as a supervisor. Because there's no evidence either that either of those two people prosecuted any of his cases. And furthermore, if that's true, right, and they had a big concern about not prosecuting cases, after the recommendation for him to transfer was made, the same supervisor who made that recommendation said, well, hold on a second. You stay on. You work the boat races this weekend. Meaning he's out, boots on the ground, actually bringing cases. So I think that we've created factual disputes for that as well. I think that, now, Mr. Henry was not terminated. He retired. He was, yes, sir. So what was the discipline? I mean, what's the, what were the adverse consequences that, to Mr. Henry, that give rise to this action? It was undisputed at the district court level that there are adverse employment actions. The first was sending him to an EAP. The second was demoting him, and the third was transferring him. And part of the issue with the transfer is he had school-age kids. And so he wasn't able to actually uproot them and transfer. So it wound up in a constructive discharge for him. And the interesting thing about that, Judge, is the superintendent at the time knew that if you transfer somebody, it's likely that they would retire. There were four other troopers who spoke out against the highway patrol who were all transferred right after their speech, and they all retired. That was something that was known at the time, and we believe that it was further evidence of what they did to be intentional. The disruption as well, if I could sort of talk about that a little bit more, you know, what we've got here is a case that the highway patrol constantly talked about. It's the drowning. They constantly talked about that. They constantly talk about Piercey's actions, the news stories, the Ellingson lawsuit, the inquest in Grelman. There is no distinction by the defendants to say that even if there is disruption, it was caused by the speech. In fact, the exact opposite is true. Mr. Turner said that there was no disruption. Everything was operating the same after the whistleblowing. Kendall said whistleblowing did not change a thing about his job. Turner also said that Mr. Piercey caused turmoil in Henry's troop from the date of the drowning through the date that he was deposed. The Stever case says that if they can't establish what has caused the disruption, then summary judgment is inappropriate, and we believe it is here. What about the, I don't recall a lot of discussion in this case about the, on the qualified immunity inquiry on the clearly established prong. What's your best, what's your best case to show that this was clearly, a clearly established right or a clearly established violation? Sexton, which was from 2000, which says that it's clearly established that you can't retaliate against a police officer for reporting potentially illegal activity. I think this case follows it directly. And then that case is also further emphasized by the Lindsay case in 2007. But it says it's clearly established that a public employer may not discharge an employee for disclosing potentially illegal conduct of public officials. And I think the third judge is Lane v. Franks, and that's a Supreme Court case from 2014. Because we've got to remember that Mr. Henry had legislative hearing testimony and deposition testimony, and it was undisputed that those were protected. And then he has this other group of speech that he made to the media and the Ellingson family that the district court found was unprotected. Well, the Waters case says that if there's a dispute about his termination being because of unprotected speech, assuming that is unprotected, and I'm just assuming it for argument's sake, and protected speech, that's a fact issue for the jury to decide. Well, are those cases that you mentioned, are they factually similar? You know, we're supposed to, on the clearly established prong, we're supposed to look at the authority. We're supposed to avoid a general level of similarity. Are those cases factually similar? I believe Sexton is- They involve the same kind of alleged misconduct by the plaintiff? Yeah, I believe Sexton is a police officer reporting potentially illegal activity. And although you can't generalize it, it doesn't have to be identical. So I think those are the same, and then Lane would be the same, and you can't retaliate it against someone for giving sworn testimony. So I think those two make clearly established law that you can't retaliate against Mr. Henry, and I think it creates a fact issue as well, that should be resolved by the jury and not the district court. And I'd ask that I reserve the rest of my time for rebuttal unless there are more questions. Very well. Thank you. Mr. Ray? Yes. Good morning, Your Honor, and may it please the court. My name is Chris Ray, and I'm an assistant attorney general for the state of Missouri. I represent several state officials, including highway patrol members in this case. The district court correctly held that on the facts taken in a light most favorable to plaintiff Randy Henry, the defendants did not violate any clearly established constitutional right belonging to Mr. Henry. Accordingly, the district court properly granted summary judgment. Now, they granted this proper summary judgment in two different respects, and I would like to talk about those this morning. The first focuses on the disruption to the workplace under the Pickering and Connick tests, and the second focuses on the clearly established right aspect of the case. Though this case has a long factual record, the record is very clear, and despite appellant's protestations, it remains uncontroverted. More importantly, the issues of whether or not there was a constitutional violation is a pure matter of law for this court to decide. The district court correctly found that Henry's non-legislative and non-testimonial speech did not amount to a protected activity, despite arguably addressing matters of public concern because the Missouri State Highway Patrol's interests outweighed those of Henry, and this goes to the disruption in the workplace. Relying on uncontroverted evidence, the district court noted that Henry was disciplined for lying, instructing others to lie, interfering with an investigation, and spreading rumors. No such speech is protected by the First Amendment, and all of which caused or could have caused a disruption in the workplace. The district court correctly recognized that law enforcement agencies like the Highway Patrol, more than any other public employers, have a special organizational need that permits greater restrictions on employee speech. Further, and this goes to prong two, the Highway Patrol did not violate a clearly established right where, as this court recently explained in Bank and the Morgan decision, the right didn't exist and nothing put the constitutional question beyond debate. Now, I'd like to discuss a couple of the points raised by plaintiffs this morning. First, they say that you never get to the conic and pickering test, and that's clearly incorrect. Now, they believe this if you read the briefs because they say that Randy Henry is a whistleblower, but nothing in the record actually indicates in a lot of this speech that he has whistleblower status. Henry lied to a prosecutor, spread unsubstantiated rumors, and various conspiracy theories. This is unprotected speech under this court's decision in Nord, where it said that if statements run true, they may be deserving of less protection under the First Amendment. Plaintiffs' claims of a cover-up fall flat as they lack supporting evidence in the record, and that's what the district court explained when they said that much of this speech does not constitute whistleblowing speech. Though this speech could evoke a high amount of public interest, the lack of supporting facts, the inappropriate matter of conveyance, and the insubordinate behavior lessen the concerns with Mr. Henry's speech. So, given that he's not a whistleblower, and given that the conic and pickering tests clearly do apply, the key focus this morning is really on the potential harm to the workplace. So, this court has addressed this in at least two different cases, and it's recently taken the decision in Bank. So, I would like to talk about the potential harm to the Highway Patrol's workplace, and then the harm that actually did occur. The Missouri State Highway Patrol has an interest in maintaining morale, discipline, and efficiency, and necessitates harmony and trust in the workplace. The district court correctly found that plaintiff's speech and the manner in which it was effectuated hurt working relationships, negatively impacted morale, disrupted the Missouri State Highway Patrol's operations and efficiencies, and impeded the ability of the plaintiff to perform his job. The Supreme Court has held that an employer does not have to wait until the extent of a disruption of the office and destruction of the working relationships takes place. This court, in Nord, and then again in Morgan recently, held that you don't actually have to prove up disruption, as plaintiffs insist that you do, but rather that the disruption has to be reasonably foreseeable. And the disruption here was easily foreseeable. As I said earlier, there were lies, there was encouraging others to lie, and there was a situation where there was a campaign insinuating that a prosecutor was engaging in improper behavior and an improper conspiracy with the Highway Patrol. That sort of speech is deeply disruptive in the law enforcement context. It's deeply improper in this context. There are two prosecutors in this case, as plaintiffs said this morning, that declined to take any more cases arising from Mr. Henry. And that is a fatal defect for a law enforcement officer. If you can't actually get a prosecutor to take your cases, I can't imagine any disruption in the workplace that is more harmful than that fact. And we have that fact in this case. Turning to whether the case puts any constitutional question in debate, Henry must show that there is an applicable precedent that puts the constitutional question beyond debate or show that a reasonable person would have known that the termination was a violation of a clearly established right. The court stated this in the Morgan case and the court also stated this in Nord. Henry is mistaken in saying that defendants must prove disruption that's not been held before and without a First Amendment right must be established because we know that proof of actual disruption is not necessary as I explained earlier. The plaintiff this morning and then in their brief, they misquote Morgan in an attempt to establish precedent. They improperly relied on a vacated panel decision. There is no case with facts similar to this one that puts the constitutional question beyond debate. And the reason for that is simple. There is no case that I can find where you have the amount of disruption here where you have a prosecutor refusing to take cases and you have an insubordinate employee who is lying in the workplace and encouraging others to lie. So those facts make it where there is nothing under this court's sovereign immunity, two-part test that puts the constitutional question beyond debate. Counsel, do we need to reach the clearly established issue in this case? I think the cleanest way to handle the case is to reach the clearly established issue sort of like the court did in Morgan and then actually given that the court can look at the record and set that aside. But really this court has a lot of options because you can either decide the case on the grounds of the clearly established issue or you can decide it on the grounds of disruption in the workplace. Either one of those would be sufficient as the district court held to sustain the judgment of the district court, Your Honor. So is the issue of adverse action here, that's not in dispute? Not really, no. We dispute that the EAP was an adverse action, but we do not dispute that there was an adverse employment action taken against Mr. Henry. He was offered a demotion, that is actually in the factual record. Demoted? He was not actually because he retired before the disciplinary process was complete. So he retired at the same rank he had been before these incidents started. So you're not really disputing that he retired in the face of the employment action? Correct, Your Honor. Turning to the evidence in this case and the admissibility of the evidence, plaintiffs have put forth 15 facts that they believe are in dispute, but they're not actually disputed. And that's worth talking about this morning. This morning, plaintiffs mentioned Exhibit FFF. What that is, is it's a statement by William CCA that concluded that there was no evidence that the Highway Patrol repressed or hid any evidence in the cause. And if you look at these 15 facts and in the exhibit, what you have here is an unfortunate litigation situation that plaintiffs have given rise to. In response to the statement of facts offered by the defendants, they responded with hundreds of additional proposed facts in what is clearly an abusive litigation strategy. The district court found that it was an abusive litigation strategy and had them redo it. The facts that are relied upon by the district court are fully properly, fully admissible, and plaintiffs' arguments and their contradictions do not make those facts any less proper for the district court to rely on. And I am happy to go into any of the facts that this court would like to discuss this morning, although I would also point you to our brief, because we discussed each of them that we could identify, in turn, and explained why the district court's reliance on those facts was fully proper. I would like to sum up my argument with two notions. First, it is undisputable. There is no fact in the record that can dispute that Henry's speech, and I would like to reiterate what that speech involved, that Henry's speech of lying, instructing others to lie, interfering with an investigation and spreading rumors, there's no fact in the record that can contravene the fact, or that can contradict the fact that that would naturally cause a disruption in a law enforcement workplace. And a law enforcement workplace, as this court has repeatedly held, and as the U.S. Supreme Court has held, is a special kind of workplace that necessitates more order than a typical workplace. And so, given that plaintiff's speech was not a protected activity, he fails under the Connick and Pickering tests. Also, as I discussed earlier, nothing in this case, no precedent before this court, would put the Highway Patrol on notice that this was a clear violation of rights. And as this court recently decided in Morgan, that means that the district court's judgment should be affirmed in the full. Unless this court has any questions, I will leave the rest of my time. Thank you, Your Honors. Thank you very much. Counsel, you have just over three minutes. Thank you. I think it's important to think about disruption and think about the facts that were presented. There is no court that I have ever read that says you can come in at litigation and just claim disruption. They're not even doing that. They haven't put forth an affidavit or anything for that proposition. Morgan doesn't even stand for that. Morgan cites to Waters and to Connick, which says, if there is public concern speech, the government needs to make a higher showing. They haven't done that. They say we can't controvert these other things that they claim. The lies, apparently, that Henry told. Piercy told lies at the coroner's inquest. He perjured himself under oath. The highway patrol knew about it and didn't discipline him. Which, to me, would mean that it's not disruptive. The rumor issue. Echternach was found to be guilty of spreading lies and rumors by the highway patrol. The highway patrol did nothing about it. That says to me that it's not disruptive. Randy Henry made speech about prosecutors. And he made speech about a prosecutor who had the implication of a conflict. And ultimately, she got out of the case. Everything that he said about that prosecutor was true. That prosecutor, Ms. Grellner, agreed she had a conflict. It's not a pleasant thing to hear that a prosecutor has a conflict. It's not a pleasant thing to hear that there's corruption within a Missouri State Highway Patrol. There's no whistleblower case that is pleasant on its surface. And I think that's the importance of what these cases say. Is that when you have speech that's of great public concern, you can't throw the employee out by a simple assertion that there's quote-unquote disruption when you get to litigation. The Supreme Court, this circuit, has always protected whistleblowers for speech. And especially speech of high public concern, which this was. There's no doubt that his legislative speech and his deposition speech were of high public concern as well. I would again point, and I don't think I did this before, but to Sexton. Sexton cites four other circuit cases that deal with this being clearly established. And those are all set out in the briefing. And also, the Sexton court goes through the Pickering analysis. And it says, even though we're going through the Pickering analysis, this is clearly established. And when it does that, it cites seven other circuits as well that held that, in fact, after the Pickering analysis on a whistleblower case like this, it was clearly established. Randy Henry was a whistleblower. His speech was of great public concern. It brought justice to the death of a 20-year-old kid. It brought a trooper before the court system. That all wouldn't have happened without him. And as a result, he's out. I don't think that any case supports that. I think that the district court should be reversed and remanded. And I'll surrender the rest of my time unless there are any other questions. I think not. Thank you very much. Thank you. Thank you, counsel, for your arguments. The case is submitted. You may stand aside.